Good morning, Jamison Edsel for the appellant and cross appellee. I'd like to reserve three minutes for rebuttal. Please watch the clock. I'd like to start, may it please the court, I'd like to start by addressing the order of August 14th, 2023, where the district court dismissed plaintiff's California Invasion of Privacy Act under Section 631 without leave to amend. The district court's opinion simply refers to a different case, Garcia v. Bill.com, and says it's dismissing our claim for all the reasons in Garcia. That was error because the cases are very different, both in the facts, the technology involved, and because I think the analysis in Garcia v. Bill.com makes a few errors in the way that it interprets this type of fact pattern. So first I'd like to point out that in Garcia, that district court said that the plaintiffs were alleging the defendant either secretly recorded their chat box conversation or allowed a third party to eavesdrop it. So it seems that the plaintiffs in that case weren't clear about their theory. Was it a first party recording case, which would typically be governed more by Section 632, or was it a case involving a third party unannounced eavesdropper, which would be a more proper 631 case? Our complaint here is very clear. There is a third party eavesdropper. We identified Full Story as one of the potential, well not potential, one of the definite session replay providers that was operational on Papa John's website at the time. So this is a clear Section 631 fact pattern. When the Garcia court says that the plaintiffs failed to allege the presence of a third party eavesdropper, that's just not applicable to our case. Counsel, I am looking at your complaint. I'm looking at you and you are. I want to make sure I'm not missing something. You're talking about count one at this point, the SIPA claim. Yes. OK. All right. And I'm looking at your paragraphs. And I see that you say that Papa John's conduct was intentional. It perfectly installed code, which allows it to eavesdrop. That's paragraph 72. Paragraph 73, the information Papa John's intercepts. But Papa John's is a party to the conversation. Party John's is a party to the conversation, but there's no exception for parties to the conversation under 631. The presence of Full Story is clear. So at ER 6244, we say that this technology would transmit the plaintiff's communications to servers controlled by Full Story. So the other side says that a party cannot eavesdrop on its own conversation. And I didn't see in the complaint anything that clearly said that Full Story was eavesdropping on the conversation that you had a suit against Full Story. So so that seems like a good argument by the other side. What's your argument for that?  I disagree. 631, there is no party exception because all parties must consent to the presence of any additional listeners. The technology we describe in a lot of detail here sends every plaintiff's, every website visitor's inputs to Full Story servers as they're being entered on the plaintiff's computer. So where in your complaint, let's let's take a look at the complaint, is it best described that Full Story is an eavesdropper on the conversation? Yeah, so the first one, we have ER, this is a there's two complaints in the case. So the second amended complaint at ER 29, paragraph 49, I believe, just getting to it. As the user interacts with any website, including Papa John's, with the embedded Full Story's script, each click, tap, et cetera, is sent in packets to Full Story servers. We further allege that Full Story uses the information they get to run some analytical analysis, sorry for the double use of the word there, but they take the sessions and then they put them in their own dashboard that then the website operator can access to get more insight into how people are navigating. So there's a there's not only a receipt of the communication by Full Story, but there's a use of it. And that's that's the service that they're offering to the website operators. We can use this script to get more information from the plaintiff's session, every click, tap, everything they're doing. We can see that and then we can show it back to you. And this is more than you would see just operating a normal website. Counsel, the the the allegations that you just referenced were made after the district court dismissed the SEPA claim with prejudice. So what do we do with that? I'm not sure that's correct. I think in the first you just said that you were referencing the second amended complaint. And my understanding was the district court dismissed the SEPA claim after based on the first amended complaint. With I think with the first dismissal was with leave to to amend unless I could be mistaken. I think you might be mistaken. My understanding is the district court addressed the SEPA claim once in the first dismissal order and dismissed with prejudice. Sure, sure. And I believe that this the particular allegation I'm talking about was also present. Yes. In the in the first amended complaint, this is ER 62 and it's paragraph 44. It's basically the same paragraph. So it was in the it was in the first amended complaint. Also, same allegation. OK, so just to tie this up as a general matter, do you think that in assessing your SEPA claim, we can consider factual allegations that might be new in the second amended complaint or not? I suppose not if we were dismissed with well, actually, you know, I take that back. I think we could because we didn't have a final order, so we couldn't have appealed the first dismissal. I think we could take a shot at adding new allegations and say, as we did, that these are still a good SEPA claim. I mean, we're still in the court. We rule 15, you're usually supposed to be granted, you know, freely leave to amend when justice requires. So if there was more that we could add in the second amended complaint and it would change the outcome, I think it would be fair for this court to consider it. But I think the allegations in the first amended complaint, the overall description of how this technology works didn't really change very much. It's the same in the first amended complaint, second amended complaint. So we might have made some clarifications here and there, but the key factual allegations about what was happening and how the technology worked, those did not substantially change between the two complaints. Counsel, I'm still puzzled by the count about the allegation in count one that Papa John is intercepting information. This is information that your client is sending to Papa John's. What are they supposed to do with this? How can they get the credit card information without intercepting it? Yeah, that is certainly true to some extent. But as I mentioned, this technology will also let Papa John's see things that the user didn't actually intend to submit. So because it's instantaneous, the session replay code captures keystrokes the second they're made. Someone might be starting to type in like, oh, here's my address, and then they might think, no, I don't want to use that address, I want to use a different address. They delete it, they come back, all of that, the initial entry, the deletion, all of that is sent to full story. So at the end of the day, Papa John's can actually get communications that the user never even fully intended to send to Papa John's. It's almost like they're getting their drafts. But the SEPA statute also, I mean, it prohibits the employment of anyone to learn the content. So Papa John's is liable here because they employed full story to learn the contents, and full story was an unannounced third party. So either way, there's a good SEPA claim here. And the district court just conflated the two parties and basically said under this logic from a different district court case, Graham v. Noom, that any time a website uses a tool like that, it can be treated just the same as the website operator. It's just using a recording, and then therefore it's more like a 632 link. Have you alleged that full story is accessing this information in real time? I mean, they're receiving it at their servers in real time, and then I don't know exactly how quickly it takes them to, I think it's probably at the end of the session is when they use it. But again, still a SEPA violation. It doesn't matter when you go in to read an intercepted communication. If A and B are having a phone conversation and B is taping it, and then plays it later, plays it the next day for C, that's a violation? That's a different fact pattern. That I don't necessarily believe would be a 631 violation. It could be a 632 violation if it's a confidential communication. But this is not our fact pattern. Our fact pattern is full story is recording the conversation between A and B as it's happening in real time, instantaneous. It's right down the middle of a classic wiretap violation of 631. If we conclude that the complaint doesn't have a viable direct liability claim, and that you have not alleged an aiding and abetting Clause 4 claim, what do we do? Is there any way to find that the district court made a mistake? I think you could still vacate the decision because our case is not Garcia. I mean, the facts are so different and our allegations are so much better that I think it's still legal error for the district court to have dismissed our claim the way it did. So I would say you could vacate and instruct the district court to reconsider, as it is, or give us one more chance to amend. But, I mean, I think all of the allegations that we need for the CIPA claim have been made. It's very clear full story is getting the people's, the website visitors' mouse movements. I think you've got facts. I think that perhaps you have facts that put that story together. But as you've alleged it, you've alleged a direct liability claim, not an aiding and abetting theory, as far as I can tell. And so I'm trying to figure out what to do with that because it seems like if all that's there is a direct liability claim, it's hard to find that the district court made a mistake in dismissing this claim. I mean, I have to respectfully disagree just on the basis that the way we describe the complaint, it's very clear that Papa John's employed full story deliberately to install this technology on Papa John's website. If that doesn't satisfy the aiding and abetting and employing someone to learn the contents of the communication, I'm honestly not sure what allegation would. It's very clear that they did this on purpose. They knew they were using full story at the time. It doesn't just end up on the website accidentally. They have to install it. If you were given leave to amend to address this point, would you add anything different, or do you think that you've said what you need to say? I mean, we could certainly, I guess, clarify as much as possible that Papa John's intentionally hired full story to use this technology so that full story could in real time get this information and then give Papa John's back more information than Papa John's would otherwise get. But I really do think those allegations are already in these complaints. I see that I have about three minutes left, so I can reserve the rest. Of course. Thank you. We'll hear from the healthier side. Good morning, Your Honors. May it please the Court. I'd like to spend most of my time talking about the cross appeal and the personal jurisdiction issue. But before I go to that, I'd like to make a couple points about the party exception and respond to some of the questions you answered. I think Judge Forrest, I think you had it exactly right, is the issue here with the complaint on the SEPA claim is what is alleged in the complaint was just direct liability. Judge Bybee, I think you pointed to a number of the most relevant paragraphs. But in paragraph 72, I think the last line of that is as telling as any of them. Papa John's directly participated in the interception, reading, and or learning of the contents of the communication. When we filed our motion to dismiss and said this claim should be dismissed because it pleads only direct liability in the opposition, there was no argument that no, we've actually also pled aiding and abetting. What the opposition did is it quoted and cited only the first three elements of 631, only the direct liability claim. The district court correctly understood that the pleading here was just direct liability. The next two cases that we're going to hear this morning has the typical fact pattern here and the typical allegations. And they're pled the way the next two cases are pled because of the party exemption. What parties, what plaintiffs have to allege to try to get around the party exemption is that the third party who's collecting information directly violates SEPA. And then the website operator is alleged to be guilty or to have violated the statute by aiding and abetting that. That all makes sense to me. The thing that's troubling is what do you do when it seems like there might be facts to state an aiding and abetting theory, but that's not actually the theory that's being described? And what do we do with the fact that it seems like the district court misapplied Garcia? I mean, I think there are differences between this case and Garcia. So a couple things. First of all, I think here there are not facts to allege the aiding and abetting, and I think it was pled this way. Why do you talk about full story and its role here and what it's even doing? It seems like that aspect of the allegations potentially triggers an aiding theory. But you would also need extra and additional factual allegations about the way that Papa John's aided and abetted full story. And that's additional factual allegations that are absent here that they allege we say are insufficient in the other cases. But I think the point is in the other cases to get around the party exception, you use aiding and abetting, but what comes with that is there needs to be additional allegations to establish aiding and abetting. Allowing this to kind of circumvent that and go directly to a party to the conversation runs right into the party exception, which this court and NRA Facebook recognize that for over 50 years the California courts have said a party to the conversation can't be held liable under SEPA because if you are in a conversation with somebody you have authorized them to learn the contents. I think this was the third complaint. They already had two chances to amend. They didn't ask for leave to amend again. I think there's lots of these cases, right? And that's, I think, in part why the district court may have relied on Garcia. It has had a number of these cases. And what's clear from Garcia, what's clear from this case and the other cases, is that the analysis of trying to hold a website operator directly liable under the first three provisions of SEPA are just barred by the party exception. The more complicated fact pattern and allegations is the aiding and abetting claim. And in Garcia there was both. The court's analysis in Garcia is for the direct liability claims. Party exception applied. Dismissed without leave to amend. On the aiding and abetting claim on Garcia, the court did give the plaintiff there leave to amend because it recognized there may be a way to plead facts to establish a claim under aiding and abetting. It wasn't an error for the district court to not do that here. Because here there has never been a suggestion that they pleaded in aiding and abetting theory. I read the paragraph of the complaint that just says that Papa John's directly participated in the interception. When we moved to dismiss on the ground that the only thing pled in this case is a direct violation of the statute, they accepted that for me. They didn't come back and say, no, we also have an aiding and abetting claim. They said, yes, this is a direct liability claim under 631 under the party exception that can't proceed. Well, they're now pointing to, I think, paragraph 44, one of the 40s in their argument. What do we make of that? That says that Full Story was taking every click-tap URL that's in every other interaction, et cetera. There certainly are factual allegations in this complaint, similar to the factual allegations in the other complaint that Full Story collects information. The critical point, though, is the cause of action and what is the theory of liability on which they want to proceed. There are no allegations here in count one in the SEPA claim that Full Story violated SEPA or that Papa John's aided and abetted Full Story's violation of SEPA. That's the type of allegations and the cause of action that we have in the other cases. What is alleged here is a direct violation. And so there are those factual allegations, but there isn't a theory of liability. There isn't a cause of action pled to say that Full Story violated the statute or that Papa John's aided and abetted in that. And merely the presence of Full Story is not enough to take this case out of the party exception. I heard a little bit of it this morning. There was also discussion in the brief that the party exception itself has no basis in the statutory text. I think that's incorrect. What the statutory text says is that to have violated SEPA, you have to have learned the contents of the communication in an unauthorized manner or without the consent of the parties. The communications that are challenging here is communications between Papa John's and the user. What the California courts have recognized for 50 years is that if you're in a conversation with somebody and you give information to them, you've authorized them to hear that and receive that. And that's the basis of the party exception. Is that true even if, as opposing counsel says, the user types some things and then erases them but they're captured? It would be. So a couple things. One, there's no allegation that that actually happened here. But with respect to information provided to Papa John's, yes, I would say that was correct. Now, in the other cases, what we'll hear is that Full Story violated SEPA by collecting that information. And I think that's a different analysis. And we'll talk about why, in the Bloomingdale's case, why that's not enough, namely because, as the allegations recognize, is that Bloomingdale's masks information typed in the text field. But for purposes of the party exception, the fact that the communication they're challenging here is the communication between the website and the user, that brings it within the party exception. If I could turn to Briskin and personal jurisdiction, I think what separates the allegations in this case from Briskin and makes this indistinguishable from the Papa John's case that the Third Circuit had in Hassan is the absence of any allegation that Papa John's knew where the user was when the user first visited the website. In Briskin, it was clear that the en banc court treated that as a critical allegation. If you look at the summary of the holding at the end of the introduction of the opinion, it's the first thing that the en banc court highlighted, is that Shopify had conceded that it knew that Briskin was in California when it had implanted a cookie on his device. Throughout the court's analysis of the Calder test, it repeatedly returned to that fact. And it's a critical fact because for personal jurisdiction, for purposeful direction, the key link needs to be between the defendant and the forum. Just remind me, were we getting a pizza delivered here or picking one up? That is the allegation. And we're picking it up in California? Correct. This is not like this is a huge surprise to Papa John's that somebody was in California. No, but it's not enough. So there's two aspects to that. I mean, on the issue of the picking up the pizza in the brick-and-mortar store, there we recognize that operating a store in the forum is purposeful availment, but it's not sufficiently related to the claim. And this is sort of the same analysis that the Third Circuit— Wait, this is—Thomas is ordering a pizza. You're collecting the information. She's picking up the pizza at the brick-and-mortar store. And your allegation is that because they're picking up the information sort of outside of the brick-and-mortar store, there's no jurisdiction in California? No. What the claim here is that the injury is a privacy-based injury that occurs immediately when you go on the website. When you click and scroll, you don't have to purchase anything. And, in fact, by the time she decides to purchase a pizza, enters her information and clicks Purchase, she has to check a box that says, I consent to the collection of information. So there is no claim at the time that she purchases the pizza. The claim arises from the clicking and scrolling and doesn't depend on whether or not a pizza is purchased. And that's what led the Third Circuit and Hasan on the identical facts to say that the claim here is not sufficiently related to the purchase of a pizza. And the analysis that Judge Hardeman went through for the Third Circuit, I think, is identical in the way it read forward to the way this court interpreted forward in the Yamashita case. There, there was an allegation that the defendant sold one type of battery in the forum, but the plaintiff was alleged to have been harmed by a different type of battery. And what this court said is the defendant may have facilitated a market in the forum for one battery, but that wasn't sufficiently related to the injury because it was a different type of battery that caused the injury. The Third Circuit went through the same analysis and said, you may, Papa John's may be developing a market for pizza in Pennsylvania, but you're not alleged that you're injured by pizza. You're alleged that you're injured by the website. And there's no allegations that Papa John's had done anything to develop a market for its website. You know, I think a lot of the, you know, both of those cases then look to Ford. I think it's important, though, to understand Ford, you know, both for what it held and the way it explained its holding, but also sort of in the context of the Supreme Court's prior decision in Bristol-Myers Squibb, which was cited throughout Ford. And Bristol-Myers Squibb, I think, was important because in Bristol-Myers Squibb, the Supreme Court recognized that Bristol-Myers Squibb had five research facilities, 400 employees, did $100 million a year in revenue in California. But all of that in forum conduct wasn't sufficient to establish specific jurisdiction. The court reiterated that you have to focus on the particular claim brought by the plaintiff or else you're going to blur the distinction between general jurisdiction and specific jurisdiction. In Ford, the Supreme Court could have said, Ford is the quintessential American automaker. It advertises everywhere. It sells its products everywhere. It's subject to personal jurisdiction everywhere. That's not what it said. What the court looked at and said, for these two particular models, we have evidence and allegations that Ford has developed a market through billboards, service centers. In these two particular states, in Minnesota, in Montana, Ford takes steps to market Crown Victorias and other cars. And for that reason, we think these claims are sufficiently related to the injuries because the very products that Ford marketed in the forum were the one that caused harm. And that is the distinction that the Third Circuit drew in Hassan. Is there any other purpose to go to the Papa John's website other than to order a pizza? Like, why else do people go to the website? I mean, certainly people go to the website and decide not to order a pizza. Where I live in Maryland, if I go to the website, it says if there's not a Papa John's location near enough to you to deliver. So there can be a lot of locations. But certainly people would go to the website because they're interested in pizza. But the point is, it may not end up in a transaction. And it doesn't need to end in a transaction in order to give rise to a cause of action. The other part of Yeshida. Our standard in our case is that if you have a website with a national viewership, jurisdiction is satisfied if the defendant appeals to profits and profits from an audience in a particular state. So the idea of you're trying to, as you use the word market, you're trying to market, you're trying to specifically capture viewers, capture an audience in the state, as opposed to just throwing it out there for the world writ large with no particular idea. So if, you know, and if you had a website that was just informational, you know, I'm just going there to learn something or whatever, maybe that would work. Your argument would work. But here the primary, if not only goal, is to either figure out where a brick and mortar store is or do an online order and then have some sort of connection to a brick and mortar store in the forum. It's hard to see how the website is not trying to develop an audience in the forum. It's not trying to develop an audience for the website. And this was, I think, the distinction the Third Circuit drew in Hassan and I think that this court drew in Yamashita. It's like are you developing a market for the product that caused the injury? So no question that Papa John's, through advertising, through many steps, is trying to develop a market for its pizza and to sell pizza. The question is what steps has it taken to try to develop a market or to promote its website in the forum? That's the distinction that the Third Circuit drew in Hassan and I think the reasoning is identical, in my view, to what the distinction this court drew in Yamashita between the marketing of one type of battery in the forum and a different battery. If you were selling Delaware pizza not available in some jurisdictions, you might have an argument, but you're selling pizza. That's all Papa John's does. We're going to the website. She's going to the website to buy pizza in California. It's just very, very difficult for me to see how you don't have jurisdiction in California. Yeah, and I guess the point is that their claim doesn't depend in any way on buying pizza. I understand that they're saying that the claim is complete before she completes the transaction. I understand that, but she's not there on frolic and detour to see whether SIPA is working. She's there to order a pizza. Well, but even people who don't order a pizza and aren't intending to order a pizza have the same claim? That's right. They may get to some point where they go, whoa, this pizza is more expensive than I thought. Or it's not available. Or I can't get it as quickly as I need to. It turns out this is a Delaware pizza not available in some jurisdictions. Well, Delaware just may not have a location near enough to you. Your time's up unless there's other questions. Apparently not. Thank you. So I've picked up that the court is very interested in whether we allege the aiding and abetting aspect of the SIPA claim. So I want to direct the court, this is our first amended complaint. ER-52, it's the first paragraph. Papa John's procures third-party vendors such as Full Story to embed snippets of the code, et cetera, et cetera. So, I mean, right out of the gate we're saying they employed them. That's the triggering language under the statute, employed. And my friend has tried to construct a waiver argument saying we didn't develop this theory. But can you address that point? Can you point anywhere into the record where you told the district court you were advancing an aiding theory? SER-30, second paragraph. The plaintiff didn't consent to a third-party session replay provider receiving simultaneous dissemination of the communications, yet that is exactly what happened. PJ, Papa John's, allowed a third party to listen in on the conversation. What's the document you're reading from? What is the document you're reading from? This is our memorandum in opposition to the motion to dismiss the First Amendment. I didn't hear the words aiding and abetting. Did you use the words aiding and abetting? We didn't use the precise words of the statute in that paragraph. It might have been useful, because that's the words used in the statute. Well, employed is also used in the statute. And I think by allowing, procuring, the factual allegation says procured, which is, I think, synonymous with employed. And, you know, the point of a complaint at Rule 12 is to provide the facts to support a claim. I don't think you lose just because you don't use every single exact precise word from a statute, as long as you have the facts that show there is a plausible violation of the statute. In reading this complaint, I mean, the only fair inference anyone could ever draw from it is, Papa John's employed Full Story to embed this code on their website so that they could obtain real-time listening to the website visitors' communications. I mean, the facts in the complaint definitely lay out the aiding, abetting, employment theory pretty clearly. And that's the first amendment of the complaint. And we explained it in our papers to the district court that this is what happened. We're not purely making a direct violation, allegation against Papa John's. But if I could just make one point. Counsel, this would also be a whole lot easier if in count one you had someplace referred to Full Story. It's true. You didn't use aiding and abetting. You just talked about Papa John's. It sounds like direct liability. In the count list, but we do begin that count by incorporating all preceding factual allegations by reference. That doesn't move me very much. Yeah, I think under Rule 8, though, I mean, it's kind of slicing the onion thin if you're like, well, it's in that part of your complaint but not that part of the complaint. I mean, we supplied the factual allegations. The theory that we're describing is pretty clear here. And just one more point. There is no first-party exception to a 631 claim. So once there's a third-party eavesdropper, Papa John's is liable. It doesn't matter that they consented because they're not allowed to invite any other listeners in without all-party consent. Thank you. Okay, we thank both sides for their argument. The case of Daisha Thomas v. Papa John's is submitted. And we'll next hear argument in Nora Gutierrez v. Converse.
judges: BYBEE, IKUTA, FORREST